Fishman, Kenneth J., J.
The plaintiff, Robert Baudanza, has moved this Court for a new trial on damages only, subject to an additur by the Court. After hearing, and upon review and consideration, the motion is ALLOWED in part, and DENIED in part.
BACKGROUND
Following a four-day trial, and after nearly a day and one-half of deliberations, the juxy returned a verdict in this motor vehicle personal injury action for the plaintiff, awarding damages in the amount of $193,278.93.[1] This sum equals the amount of undisputed medical bills submitted to the jury. The jury also found comparative negligence on the part of the plaintiff, and attributed fifty (50%) percent negligence to both the plaintiff and the defendant, Comcast of Massachusetts I, Inc.[2]
The evidence at trial establishes that, on December 5, 2003, the plaintiffs car was struck on the driver’s side in an intersection by a Comcast truck weighing no less than 5500 lbs. and traveling at a speed of anywhere between 26 and 50 mph depending upon whose testimony was credited. The vehicles came to rest a distance from the point of collision, and the plaintiffs vehicle suffered substantial damage. An eyewitness observed the plaintiff stuffed into the foot well of the driver’s side of his motor vehicle. He saw the plaintiff bleeding and choking on powder spilling from an airbag into his mouth. The plaintiff was unable to get out of the vehicle, and stated to the witness that he was dying, and could not breathe.
The plaintiff suffered fractured ribs on both the left and right sides. These fractures created a serious condition known as “flail chest,” and collapsed his left lung. He also had subdural hematoma and fractured front teeth. During his initial eighteen-day hospitalization, the plaintiffs ruptured spleen and lacerated pancreas were removed, and his ruptured diaphragm was surgically repaired. A second surgeiy was necessary to deal with the rib fractures and a correction of the left pneumothorax. When discharged to his home, he required visiting nurses to deal with the drainage tubes.
He returned to the hospital in March 2004 for five days to treat an abscess that had developed at the site of his splenectomy, and, in November 2004, he was again hospitalized for treatment of deep venous thrombosis (DVT). This latter condition, which was discovered because of severe leg pain suffered by the plaintiff and was caused by the loss of the plaintiff s spleen, is the occlusion of venous outflow in the legs by blood clots, and is treated by medication. The plaintiff faces future risks both from the medication and from a potential fatal pulmonary embolism.
There was undisputed evidence presented at trial that the plaintiff has reduced functioning of his left shoulder and a reduction of strength and stamina. The plaintiff was forty-seven years old at the time of the accident. He was out of work for about five months following the collision, and then returned to work in a reduced capacity in his plant facilities managerial position until the plant closed in July 2005. Although a master electrician, the plaintiff could not perform all the functions necessary for that job after the accident. He did not return to work despite some unexplained efforts to find employment, until he began working for his family’s electrical contracting business as a helper in July 2006. As a plant facility’s manager, he received $1,300 per week.[3]
The plaintiff testified without contradiction that he is limited to two hours of uninterrupted sleep, because he must now sleep propped up on a couch, and that he continués to have constant pain. He testified that his physical limitations prevent him from having custody of his seven-year-old son who needs substantial care due to a severe form of autism and a seizure disorder.
At trial, both in his opening statement and closing argument, the defendant’s counsel expressly stated that his client did not dispute the severity or extent of the plaintiff s injuries. In response to this motion, the defendant argues that the jury may have concluded that any pain and suffering realized by the plaintiff was the result of alcohol withdrawal and not the injuries from the accident. Although the hospital records reflect that the plaintiff was examined for alcohol dependency with withdrawal, alcohol addiction was ultimately ruled out.
DECISION
Mass.R.Civ.P. 59(a), governing motions for new trial, provides in pertinent part that “[a] new trial shall not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court adjudges reasonableness.” The Supreme Judicial Court, while finding the additur process constitutional, noted, “we emphasize that the trial judge is to use the additur process only when he concludes that the verdict is sound except for the inadequacy of the amount and the inadequacy is such as to descend to the level of unreásonable.” Freeman v. Wood, 379 Mass. 777, 785 (1980).
This Court concludes that the jury’s verdict was sound except for the unreasonable and inadequate damage award for the plaintiffs pain and suffering. The jury was instructed on four areas of damages: medical-related expenses, permanent conditions, loss of earning capacity, and pain and suffering. The jury’s verdict, as noted above, reflects the exact amount of medical expenses incurred by the plaintiff. Thus, no damages were awarded for the other areas of damages. While the plaintiff arguably has a permanent loss of bodily function from his injuries, the jury may have concluded that he is able to function well enough that no monetary damages were appropriate. Similarly, even though the plaintiff claimed that he could no *140 longer perform the tasks of a master electrician, the jury may have found that he could continue to work as a plant facilities manager or that he was earning as much as an electrician’s helper in his family’s business as he did as a manager given that there was no evidence to the contrary.
The absence of any jury award for pain and suffering in this case, however, is clearly unreasonable. The defendant’s contention that this Court may consider that the jury’s verdict might include damages for pain and suffering because there was no special questions itemizing the various distinct areas of damages defies logic and common sense. Here, the evidence overwhelmingly established, and the defendant conceded, that the plaintiff suffered severe injuries in this accident, followed by multiple surgeries, life-threatening complications and a lifetime of pain and discomfort. While this Court is reluctant to substitute its judgment on the issue of damages for that of the jury, it must do so when the verdict ignores undisputed evidence and is patently unreasonable and inadequate. This Court finds that damages in the amount of $400,000 would have been reasonable and adequate to compensate the plaintiff for the past, present and future pain and suffering he has endured and continues to endure as a result of the defendant’s negligence. The jury having found that 50% of the negligence is attributed to the plaintiff, that amount must be reduced to $200,000. Therefore, a new trial shall be granted in this case on the issue of damages for pain and suffering only if the defendant does not accept the addition to the verdict in the amount of $200,000.
ORDER
For the reasons stated above, it is hereby ORDERED that the plaintiffs motion for a new trial shall be ALLOWED to the extent it seeks a new trial on the issue of damages for pain and suffering unless the defendant accepts an additur to the verdict in the amount of $200,000. The motion for a new trial is DENIED in all other respects.

 The verdict was returned at approximately 3:55 p.m. on Friday, February 15, 2008. One of the fourteen deliberating jurors, who had made his travel plans known during the jury selection process, would have been excused from further deliberations, with the consent of the parties, had jury deliberations continued into the following week. If no verdict had been reached that Friday, the jury would have been excused until Tuesday, February 19, 2008, as Monday was Patriot’s Day (and the remainder of the week was a vacation week for the public schools).

 The judgment, therefore, was for $96,639.47, with interest thereon in the amount of $44,290.39.

 There was no evidence concerning the amount of his current earnings.